IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SIDNEY MUSGROVE § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | NO. 3-07-CV-0920-BD |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sidney Musgrove seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that he is disabled due to a variety of ailments, including sleep apnea, hypertension, back pain, and right knee problems. After his application for disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on June 6, 2006. At the time of the hearing, plaintiff was 61 years old. He is a high school graduate, attended college for one year, and has past work experience as a calibration technician. Plaintiff has not engaged in substantial gainful activity since November 22, 2004.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from obesity, degenerative disc and joint disease, sleep apnea, and hypertension, the judge concluded that the severity of those

impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a limited range of light work, including his past relevant work as a calibration technician. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

II.

In three broad grounds for relief, plaintiff contends that: (1) the ALJ failed to recognize his allergies as a severe impairment; (2) the ALJ improperly evaluated his credibility; and (3) substantial evidence does not support the finding that he has the residual functional capacity to perform his past relevant work.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first complains that the ALJ failed to recognize his allergies as a severe impairment which, in turn, adversely affected the determination of his residual functional capacity. (*See* Plf. MSJ Br. at 3-6). The social security regulations provide:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. § 404.1520(c). Notwithstanding the plain language of this regulation, the Fifth Circuit has held that a literal application of section 404.1520(c) would exclude far more claimants than the statute intended. *See Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000), *citing Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). As a result, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101, *quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). If the ALJ does not set forth the correct standard by reference to *Stone* or by an express statement recognizing the proper construction of the regulation, the court must presume that an incorrect standard has been applied and remand the claim to the Commissioner for reconsideration. *See Loza*, 219 F.3d at 393; *Stone*, 752 F.2d at 1106; *Eisenbach v. Apfel*, No. 7-99-CV-186-BC, 2001 WL 1041806 at *6 (N.D. Tex. Aug. 29, 2001). In this case, the hearing decision specifically cites *Stone* as well as the applicable regulations. (*See* Tr. at 19). Therefore, the only question is whether substantial evidence exists to support the finding that plaintiff's allergies are not a severe impairment. (*See id.*).

In an attempt to establish the severity of his allergies, plaintiff relies on entries in his medical records, which document symptoms such as wheezing, bronchitis, allergic rhinitis, chest tightness, and shortness of breath. (*See id.* at 200, 202-03, 242). However, the diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is "severe." *See Hill v. Astrue*, No. H-08-3160, 2009 WL 2901530 at *6-7 (S.D. Tex. Sept. 1, 2009); *McClatchy v. Barnhart*, No. ASA-03-CA-0914-X, 2004 WL 2810100 at *6 (W.D. Tex. Dec. 3, 2004), *rec. adopted*, 2005 WL 1593395 (W.D. Tex. Jun. 30, 2005), *citing Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Plaintiff bears the burden of proving that the diagnosed condition has more than a minimal effect on his ability to engage in work related activities. *McClatchy*, 2004 WL 2810100 at *6. Here, plaintiff was still working at the time he was diagnosed with and received treatment for his allergies. (*See* Tr. at 277-78, 293-329). According to his treating physicians, plaintiff's allergy symptoms were well-controlled with immunotherapy and limited medication. (*See id.* at 306, 310, 314, 318, 322, 324, 327, 329, 331, 333). Pulmonary function testing revealed good results. (*Id.* at 327).

Significantly, none of plaintiff's doctors ever placed any restrictions on his work activities because of his allergies. Nor did plaintiff ever indicate that he had difficulty performing his job as a result of this condition. "[T]he ability to work while experiencing an impairment suggests that the impairment is not severe." *Winget v. Astrue*, No. MO-07-CV-017, 2007 WL 4975206 at *7 (W.D. Tex. Dec. 14, 2007).

Plaintiff also relies on the opinion of Dr. Sterling Moore, a testifying medical expert, who acknowledged that plaintiff experienced "respiratory problems" and stated that his ability to perform work activities was limited by the need to avoid "pulmonary irritants." (Tr. at 387, 389). An ALJ is entitled to reject the opinion of a medical expert if the evidence supports a contrary conclusion or the opinion is not adequately supported by the record as a whole. *Hutchison v. Apfel*, No. 2-98-CV-087, 2001 WL 336986 at *8-9 (N.D. Tex. Mar. 9, 2001); *see also Taylor v. Apfel*, 228 F.3d 409 (Table), 2000 WL 1056273 at *1 (5th Cir. Jul. 24, 2000) (ALJ may reject the opinion of *any* physician if not supported by the record). In this case, Dr. Moore's opinion is contrary to the objective medical evidence, which does not indicate that plaintiff's allergies had any effect on his ability to work. Thus, the ALJ was not required to accept Dr. Moore's opinion testimony.

Nor was the ALJ required to accept plaintiff's testimony that his allergy symptoms make it difficult for him to use the CPAP machine to treat his sleep apnea. (*See* Tr. at 201, 394, 402). There is no objective medical evidence in the record to support that assertion. The only suggestion to the contrary came from plaintiff himself, and that self-serving testimony contradicted earlier reports made by plaintiff to his primary care physician that he was "noncompliant" with his CPAP because he found it hard to fall asleep while wearing the device. (*See id.* at 278, 281). In view of this evidence, the ALJ was entitled to find that plaintiff's allergies are not a severe impairment.

C.

Next, plaintiff argues that the ALJ improperly assessed his credibility. (*See* Plf. MSJ Br. at 7-9). At the administrative hearing, plaintiff testified that he was unable to work due to sleep apnea, high blood pressure, and pain in his knees and back (Tr. at 394-96). The ALJ rejected plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms as "not entirely credible." (*Id.* at 20). Specifically, the ALJ explained:

> The record shows that the claimant has sleep apnea that is alleviated with the use of a CPAP machine. He has hypertension without any complaints of chest pain or other related problems. During the claimant's consultative examination on March 28, 2005, he stated that he could lift 20 pounds, stand for 30 minutes at a time, and sit for 60 minutes at a time. He denied joint swelling, and had not had any treatment for his sleep apnea in 3 years. He reported that he cooked, washed dishes, did laundry, swept and vacuumed, went grocery shopping, drove, and attended church every Sunday. Right knee x-ray showed moderate osteoarthritic changes. X-ray of the lumbar spine showed degenerative arthritic changes compatible with the claimant's age. His chest x-ray showed negative findings. His hypertension was noted as stable. Follow-ups since the claimant's alleged onset date show that he infrequently mentioned right knee problems. Physical exam on January 18, 2006 revealed only mild right knee swelling. The claimant's extension only lacked a few degrees. Dr. Hamm only limited the claimant from "aggressive" activity.
>
> Although the claimant testified at the hearing that he can only stand 5 minutes and sit with pain, he had earlier stated that he could stand ½ hour and sit 60 minutes. He is able to drive, help his disabled wife, go to church, change oil and check fluids for his Ford, and take trips. He uses only over-the-counter Tylenol. The claimant further testified that he actually was not disabled and would have continued to work had he not been laid off due to outsourcing of his job, on the date that he alleges he became disabled. He drew unemployment benefits for 2 and ½ months. He specifically testified that he would have continued to work had his job not been outsourced.

(Tr. at 20) (internal citations omitted).

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR 96-7p, 1996 WL 374186 at *2 (1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine whether they limit the ability to do basic work activities. *Id.*; *see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3. Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were

considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

In his decision, the ALJ cited to the applicable regulations, summarized the evidence, and articulated legitimate reasons for finding that plaintiff's testimony was "not entirely credible." (Tr. at 20). Contrary to plaintiff's argument, the ALJ did not mischaracterize the record or make findings inconsistent with plaintiff's testimony.[1] Nor is there any medical evidence to suggest that plaintiff is precluded from all work activity. To the contrary, a residual functional capacity assessment performed by a state agency physician shows that plaintiff can perform a significant range of light work. (*See* Tr. at 207-14). A similar conclusion was reached by Dr. Moore, the testifying medical expert. (*Id.* at 388-89). The ALJ used the proper legal standards in assessing plaintiff's credibility, and the resulting determination is supported by substantial evidence.

D.

Plaintiff also challenges the finding that he has the residual functional capacity to perform his past relevant work as a calibration technician. According to plaintiff, the assessment of his residual functional capacity is not supported by substantial evidence because the ALJ: (1) failed to include limitations resulting from his allergies; (2) improperly rejected the opinions of his treating physician; and (3) did not make specific findings regarding the physical and mental demands of his prior work. The court will address each argument in turn.

---

[1] The ALJ incorrectly noted that plaintiff cooked and did the laundry. (*See* Tr. at 20). In all other respects, the hearing decision accurately summarized the evidence. Plaintiff testified that he does the shopping and helps his wife -- who is disabled -- with housekeeping chores, including washing dishes and occasional vacuuming. (*Id.* at 396, 398, 399-400). With respect to pain management, the ALJ correctly noted that plaintiff's medication is limited to over-the-counter analgesics, like Tylenol. (*Id.* at 396). Although plaintiff occasionally takes Celebrex if his doctor provides a sample, he has not been given a prescription for stronger pain medication. (*Id.*). Plaintiff also testified that he stopped working because his job was outsourced, and not because his impairments prevented him from working. (*Id.* at 393). Had his job not been outsourced on November 22, 2004, plaintiff said he would have gone back to work the next week. (*Id.*).

1.

The ALJ was not required to include any limitations resulting from plaintiff's allergies in his residual functional capacity assessment because, as previously discussed, the objective medical evidence does not support any such limitations. As factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Here, the ALJ properly weighed all the evidence and rejected plaintiff's claims that his allergies are severe and that his sleep apnea, hypertension, and pain are disabling. The residual functional capacity assessment incorporates all limitations that are supported by the record.

2.

Plaintiff also criticizes the ALJ for rejecting the opinions of his treating physician, Dr. Jeffrey Hamm. The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188 at *4 (SSA Jul. 2, 1996). *See also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;

>   4. the support of the physician's opinion afforded by the medical evidence of record;
>
>   5. the consistency of the opinion with the record as a whole; and
>
>   6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

The record shows that Dr. Hamm, an orthopedic surgeon, treated plaintiff for pain, stiffness, swelling, and loss of function related to degenerative joint disease in his knees. (*See* Tr. at 340-41). In a residual functional capacity questionnaire dated January 18, 2005, Dr. Hamm noted that plaintiff's symptoms significantly limited or precluded him from: (1) maintaining the attention and concentration needed to perform even simple work tasks; (2) walking more than three blocks; (3) sitting for more than 30 minutes at a time or more than four hours in a day; (4) standing for more than five minutes at a time or more than two hours in a day; (5) working more than 30 minutes before changing positions or getting up and walking around; (6) lifting more than 10 pounds; (7) twisting, stooping, bending, crouching, or squatting; and (8) maintaining regular attendance at work. (*Id.* at 335-38). Dr. Hamm also determined that plaintiff should elevate his legs at least one-third of the work day. (*Id.* at 337).

The ALJ specifically rejected these opinions, finding that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, sit eight hours in an eight-hour work day, stand or walk two hours in an eight-hour work day, occasionally stoop, kneel, crouch, and crawl, and change positions only once an hour. (*See id.* at 20). In a thorough and well-reasoned decision, the judge explained that Dr. Hamm's residual functional capacity assessment was inconsistent with other evidence in the record, including the doctor's own findings:

> I reject Dr. Hamm's opinion [ ]. Dr. Hamm treated the claimant in 2003 and 2004 when the claimant was working prior to being laid off. Records [ ] indicates [sic] on 2/18/2004 the claimant was doing very well, motion is good, minimal swelling, he is very happy. The claimant's alleged onset date is November of 2004 and Dr. Hamm did not treat or care for the claimant until [ ] 1/18/2006, where a very limited exam found mild swelling. ACL, PCI, MCL and LCL are Okay. Dr. Hamm's treatment notes stated "I don't think he will be able to do a lot of aggressive activity." The infrequent treatment with only one visit after the alleged onset date and actual treatment records from Dr. Hamm fail to support the assessment [ ]. Evidence of the claimant's activities of driving, lawn work and changing oil in vehicles also fails to support Dr. Hamm's opinion.

(*Id.* at 21). This explanation constitutes "good cause" for giving Dr. Hamm's treating source opinion limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 404.1527(d)(2), he cited to the applicable regulations and noted that all relevant factors had been considered. (*Id.* at 19). The regulations require only that the Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to a treating source opinion. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ need not recite each factor as a litany in every case. No error occurred in this regard.

3.

Finally, plaintiff argues that the ALJ failed to make specific findings regarding the physical and mental demands of his prior work. (*See* Plf. MSJ Br. at 12-14). "When making a finding that

an applicant can return to his prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994), *citing* 20 C.F.R. § 404.1520(e). The ALJ may not rely on generic classifications of previous jobs. *Id., citing* SSR 82-61, 1982 WL 31387 at *1 (1982). Instead, the ALJ must list the specific physical and mental requirements of the previous job and assess the claimant's ability to perform that job. *Id.*

The hearing decision falls short of that requirement. In describing plaintiff's past relevant work, the ALJ merely identified the job as "calibration technician/skilled light work." (*See* Tr. at 21). Nowhere does the ALJ discuss the specific physical and mental requirements of the job, or assess plaintiff's ability to perform the physical and mental demands of his prior work. Nor did Tammy C. Donaldson, the vocational expert who testified at the hearing, explain the specific demands of this job. Instead, Donaldson merely noted that it was classified as "light, SVP of 6."[2] Despite this procedural error, plaintiff has failed to demonstrate prejudice. The court has already determined that substantial evidence supports the ALJ's residual functional capacity assessment. There is no reason to believe that the disability determination would have been different had the ALJ made specific findings regarding the physical and mental demands of plaintiff's prior work. *See Latham v. Astrue*, No. 7-07-CV-086-BD, 2008 WL 4635396 at *4 (N.D. Tex. Oct. 15, 2008) (Kaplan, J.) (claimant was not prejudiced by ALJ's failure to make required findings as to the physical and mental demands of claimant's prior work where there was no reasonable possibility that the resulting disability determination would have been different); *Parker v. Barnhart*, 431 F.Supp.2d

---

[2] SVP, or specific vocational preparation time, is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001), *quoting* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B-1 (1993). The higher the SVP rating, the more time that is required for the worker to learn the job.

665, 674 (E.D. Tex. 2006) (same); *Medina v. Barnhart*, No. SA-04-CA-1057-FBN, 2005 WL 2708789 at *9 (W.D. Tex. Oct.19, 2005) (same).

## CONCLUSION

The hearing decision is affirmed in all respects.

DATED: November 13, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE